# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| International Oil Trading Company | ) | ASBCA Nos. 57491, 57492 |
| | ) | |
| Under Contract No. SPO600-07-D-0483 | ) | |

APPEARANCES FOR THE APPELLANT:    Ronald H. Uscher, Esq.
    Donald A. Tobin, Esq.
    Lori Ann Lange, Esq.
      Peckar & Abramson, P.C.
      Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Daniel K. Poling, Esq.
      DLA Chief Trial Attorney
    Howard M. Kaufer, Esq.
      Senior Counsel
    Caroline L. Chien, Esq.
      Assistant Counsel
      DLA Energy
      Fort Belvoir, VA

## OPINION BY ADMINISTRATIVE JUDGE FREEMAN ON THE GOVERNMENT'S MOTION FOR RECONSIDERATION

The government moves for reconsideration or clarification of our 22 June 2012 decision[1] that sustained in part appellant's motion for partial summary judgment in ASBCA Nos. 57491 and 57492. In that decision we stated:

> The specified primary method and alternatives (i) and (ii) of the Quantity Determination clause clearly placed the risk of fuel losses en route from Aqaba to the discharge sites on IOTC. However, alternative (iii) of the same clause equally as clearly placed the risk of en route fuel losses on the government.

*International Oil Trading Company*, ASBCA Nos. 57491, 57492, 12-2 BCA ¶ 35,104 at 172,376.

The government moves for reconsideration or clarification on the basis that the motion decided by the Board sought a determination that the quantity of fuel delivered by

---

[1] Judge Thomas, who participated in our decision, has since retired.

International Oil Trading Company (IOTC) to the government should be determined pursuant to the Quantity Determination clause of the contract (F1.09.100(a)(2)(iv)(A)(iii)) and did not seek any decision concerning three risk of loss clauses found elsewhere in the contract (gov't mot. at 1-2). We grant the motion and clarify our decision.

The captioned contract (hereinafter "Contract 0483") was for the sale and delivery of fuel by IOTC to the government at four sites in Iraq. The Quantity Determination clause of the contract specified the use of temperature compensating meters at the delivery sites as the primary method of measuring the delivered fuel for payment purposes. The Quantity Determination clause also specified three alternative methods of measurement, if the temperature compensating meters were "inoperative." The three alternative methods were (i) calibrated meter on the fuel trucks at the delivery site, (ii) gauging the fuel trucks at the delivery site, and (iii) loading rack meters or scales at the fuel loading site in Aqaba, Jordan. 12-2 BCA ¶ 35,104 at 172,373.

During performance of Contract 0483, the government did not have temperature compensating meters at any of the four delivery sites in Iraq. Nor did it require IOTC to provide calibrated meters or gauging devices on the fuel delivery trucks. At three of the delivery sites, the government measured the delivered fuel quantity for payment by meters and manual computation of the temperature compensation. At the fourth site, the government had no meters at all and accepted the loading quantity measurements at Aqaba provided by IOTC. 12-2 BCA ¶ 35,104 at 172,373.

In our 22 June 2012 decision, we held that the government's measurement of the delivered fuel using meters and manual computation of temperature compensation was not compliant with the Quantity Determination clause, and that in the absence of the specified temperature compensating meters, and any direction for IOTC to provide calibrated dispensing meters or calibrated gauging devices on the fuel trucks, the parties were required by the contract to use the alternative (iii) loading point measurement method for payment. 12-2 BCA ¶ 35,104 at 172,376.

The government's motion for reconsideration cites three clauses of the contract it contends are relevant to the issue of risk of fuel losses between loading and delivery and points out that neither IOTC's motion, the government's opposition, or the Board's decision cites or analyzes these clauses (mot. at 8-10). The Acceptance, Risk of Loss clause states that: "the contractor assumes all risk of loss associated with performance of this contract [including]…loss for petroleum product prior to Government acceptance at destination" (R4, tab 1 at A-12). The F.O.B. Destination clause states that: "The Contractor shall…[b]e responsible for any loss of and/or damage to the goods occurring before receipt of the shipment by the consignee at the delivery point specified in the contract" (*id.* at A-31). The Invoice Discrepancies clause states that: "In the event of a discrepancy between the invoiced quantity of fuel and the quantity of fuel received…the Contractor shall be paid for actual quantities of fuel received" (*id.* at A-32). We refer hereinafter to the foregoing clauses collectively as the "risk clauses."

Appellant states that the government is attempting to relitigate the Board's decision, but concurs that "the Board merely decided how the quantity of fuel that was delivered, *and accepted by* [the government], would be measured for payment purposes" (app. opp'n at 1).

We agree with both parties. Our decision analyzed the undisputed facts and interpreted the Quantity Determination clause to determine what method the contract required the parties to use to determine how much fuel was delivered by IOTC. We were not presented with and did not analyze the risk clauses and expressed no opinion as to whether there was any interplay between the Quantity Determination clause and these clauses. Our use of the term risk of loss (12-2 BCA ¶ 35,104 at 172,376) was not intended to convey that we had made such an analysis but merely to observe that three of the four methods of quantity determination set out in the contract measured the oil delivered by IOTC at the delivery point, while the fourth, and the one we determined was the contractually required method given the facts, measured the oil delivered by IOTC by reference to the loading point. The difficulties that may arise with such a method are readily apparent.

CONCLUSION

Our decision is clarified to the extent set forth above.

Dated: 25 April 2014

MONROE E. FREEMAN, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 57491, 57492, Appeals of International Oil Trading Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

4